IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JANET DOREEN SMITH, ) | CIVIL ACTION NO. 9:14-219-MGL-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on November 16, 2010 (protective filing date), alleging disability as of January 1, 2007, due to a damaged sciatic nerve, herniated discs at L4 and L5, hypertension, diabetes, obesity, heart problems, and asthma. (R.pp. 14, 35, 124, 130, 156). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge

---

[1] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



(ALJ), which was held on June 28, 2012. (R.pp. 31-56). At the hearing, Plaintiff amended her alleged onset date to December 13, 2008. (R.p. 14, 35). The ALJ thereafter denied Plaintiff's claims in a decision issued September 28, 2012. (R.pp. 14-24). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 2-6).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].



Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was thirty (30) years old on her alleged disability onset date, has a high school education (plus two years of college) and past relevant work as a fast food worker, data entry clerk, outbound caller, waitress, and sales clerk. (R.pp. 22, 124, 130, 157). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of a back disorder, diabetes, and asthma, she nevertheless retained the residual functional capacity (RFC) to

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



perform sedentary work,³ restricted to never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally stooping, crouching, kneeling, or crawling; frequent pushing/pulling and overhead reaching; the allowance of a sit/stand option to be exercised at her workstation, as necessary; avoidance of concentrated exposure to temperature extremes, humidity, and respiratory irritants; and avoidance of even moderate exposure to hazards such as unprotected heights. (R.p. 16, 18). Although the ALJ found that Plaintiff could not perform any of her past relevant work with these limitations, he determined after obtaining testimony from a vocational expert that Plaintiff could perform other jobs existing in significant numbers in the national economy and was therefore not disabled during the period at issue. (R.pp. 22-23).

Plaintiff asserts that in reaching this decision, the ALJ erred because his step two findings are not supported by substantial evidence, he failed to evaluate Plaintiff's impairments in combination, and because his RFC analysis is not supported by substantial evidence. Plaintiff further asserts that the Appeals Council failed to appropriately consider the additional evidence submitted to it in violation of <u>Meyer v. Astrue</u>, 662 F.3d 700 (4th Cir. 2011). After careful review and consideration of the evidence and arguments presented, the undersigned is constrained to agree with Plaintiff that the Appeals Council failed to properly consider and evaluate the new evidence submitted to that body in compliance with the standards set forth in <u>Meyer</u>, thereby requiring a reversal with remand in this case.

---

³Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).



# I.

In determining Plaintiff's RFC, the ALJ discussed Plaintiff's testimony and her medical records concerning her back problems, diabetes, breathing difficulties (including asthma), and obesity.[4] (R.pp. 19-22). The ALJ wrote that an RFC for sedentary work with additional postural limitations, additional environmental limitations, avoidance of respiratory irritants, and a sit/stand option would accommodate Plaintiff's back impairment with its associated pain symptoms, the functional limitations caused by her diabetes, any breathing difficulties she might be experiencing, and any limitations from her obesity. (R.p. 21-22). The ALJ stated that his RFC assessment was supported by the weight of the evidence of record, and that although there were positive findings that "somewhat support" Plaintiff's subjective symptoms and reported limitations, the objective findings did not confirm that Plaintiff's impairments were of such a severity that they could reasonably be expected to produce the pain and functional limitation she alleged. (R.p. 22). As part of the rationale for making this determination, the ALJ specifically noted that "none of [Plaintiff's] treating physicians have placed permanent work restrictions on her or advised that she was incapable of all types of work activity." (R.p. 22).

Two of Plaintiff's treating physicians were Dr. Jason Highsmith and Dr. Samuel Schumann. Dr. Highsmith, a neurological surgeon, treated Plaintiff's back problems beginning in January 2010, and performed decompression surgeries in February 2011 and July 2012. (R.pp. 297-299, 620-621, 687, 1032-1059). Dr. Schumann (with Palmetto Primary Care Physicians), treated Plaintiff for various medical conditions beginning in February 2010, including diabetes,

---

[4] At the hearing, Plaintiff testified that she was five feet, two inches tall and weighed 322 pounds. (R.p. 48).



hypertension, hyperlipidemia, gastroparesis,[5] anemia, and edema. (R.pp. 409-469, 752-793, 932-937, 978-1015).

On January 26, 2010 Dr. Highsmith saw Plaintiff for her complaints of low back pain and difficulty walking, noted that Plaintiff had a large broad-based disc herniation completely into the central canal bilaterally at L4-5, and opined that "given her size and the breadth of her disc herniation", she needed surgery and that a "microdiscectomy would [not] be adequate." (R.pp. 298-299). Plaintiff was seen by Dr. Schumann the following week as a follow-up to Plaintiff having to be hospitalized for gastrointestinal issues, where she was noted to be suffering from, among other ailments, chronic back pain and gastroparesis. (R.pp. 435-436). Dr. Schumann continued to see Plaintiff throughout 2010, with her condition by December 2010 noted to include "moderate [to] severe" gastroparesis, mild to moderate anemia, left side numbness, and some numbness and tenderness in her extremities, among other problems, although she denied back pain at that time. (R.pp. 409-417). However, the record confirms that a little over a month later, Dr. Highsmith performed surgery on Plaintiff's back for her "severe" lumbar stenosis which had "failed conservative management". (R.pp. 620-621). About three (3) weeks post-surgery, Dr. Highsmith noted that Plaintiff was "overall getting better" but still had some right leg weakness and was "still in a significant amount of pain", noted as being 10/10. (R.p. 687). Plaintiff thereafter continued to be followed by numerous medical providers.

In addition to the impairments found to be severe by the ALJ (diabetes, asthma, and a back disorder), the ALJ also noted that Plaintiff had been diagnosed with anemia, but found it was

---

[5]Gastroparesis is "paralysis of the stomach, usually from damage to its nerve supply so that food empties out much more slowly, if at all. Symptoms include early satiety, nausea, and vomiting." Dorland's Illustrated Medical Dictionary, 765 (32nd ed. 2012).



not a severe impairment because it was "adequately controlled when the claimant is compliant with taking her prescribed medications." (R.p. 17). The medical records reflect that in September 2010, Dr. Schumann noted that Plaintiff had taken her medication for anemia as instructed and that "the severity has been mild, moderate and improving." (R.p. 418). However, in July 2010, Plaintiff was admitted to Summerville Medical Center with anemia (hemoglobin of 7.3),[6] non-ischemic chest pain, and hypoglycemia. (R.pp. 329-339). Further, her first back surgery in 2011 was complicated by anemia; (R.pp. 602-603); and during an April 2011 emergency room visit for abdominal pain, it was noted that Plaintiff had anemia (microcytic), and that her laboratory results were hemoglobin 9.4 and hematocrit 27.8. (R.pp. 701-709).

The ALJ also did not mention gastroparesis in his step two finding, although he found at step three that the combined effects of Plaintiff's impairments did not equal the severity of those described in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1) at 1.04 (Disorders of the Spine), 3.03 (Asthma), 4.00 (Cardiovascular Disorders), 7.00 (Hematological Disorders) or 9.00 (Endocrine Disorders), and stated that he considered all of Plaintiff's symptoms in making his RFC determination. (R.p. 17-18). In discussing Plaintiff's credibility and RFC, the ALJ only mentioned Plaintiff's testimony that gastroparesis caused her difficulty digesting her food and medications, although the medical record contains numerous references to this impairment. Plaintiff was admitted to Trident Medical Center for five days in January 2010, and her discharge diagnoses included gastroparesis. (R.pp. 19, 607-609, 610-611). Plaintiff's gastroparesis was also noted by Dr. Michael A. Sagatelian (her gastroenterologist) to have improved with the use of Reglan

---

[6]Testing revealed a hematocrit of 22.1 (the laboratory results contain a reference range of 33.4 -42) and hemoglobin of 7.3 (reference range of 11.4 to 14.1). (R.p. 318).



on March 15, 2010. (R.p. 352).   However, she was treated twice in the emergency room in April 2010 for abdominal pain. (R.pp. 529-537; 593-601; 628-629).  Although Dr. Schumann noted that Plaintiff's gastroparesis was improving in May 2010 (R.p. 427), in September 2010 Plaintiff's gastroparesis was described as "moderate and severe" and she was referred to gastroenterology and prescribed a third medication for her condition (R.pp. 418-420).   Dr. Sagatelian thought that Plaintiff's narcotic was increasing her gastroparesis and reflux and asked that she decrease the amount she was taking, and it was noted that her condition improved by October 2010.  (R.pp. 348-351).   Dr. Schumann continued to prescribe medications for gastroparesis after that time. (See R.pp. 753-775). Plaintiff sought treatment at the Emergency Department at Trident Medical Center in April 2011 for abdominal pain; (R.pp. 701-709); and on June 7, 2012, Dr. Schumann noted that Plaintiff's gastroparesis was aggravated by her diabetes and she was experiencing stomach pain, yellow and loose stool.  (R.pp. 979-981).

       The ALJ determined that the neurological and lumbar medical evidence, including the records of Dr. Highsmith's surgery, established that Plaintiff could perform sedentary work with the postural limitations assigned together with a sit/stand option to accommodate Plaintiff''s back impairment with associated pain symptoms. (R.pp. 20-21).  The ALJ also cited the medical record, including records from Dr. Schumann, to support his other findings.  (R.pp. 17, 21).  Again, as part of the rationale for his findings and decision, he specifically noted that "none of the [Plaintiff's] treating physicians have placed permanent work restrictions on her or advised that she was incapable of all types of work activity."  (R.p. 22).



## II.

In response to these findings and as part of her appeal of the decision in this case, Plaintiff submitted to the Appeals Council letters from both Dr. Highsmith and Dr. Schumann. In a letter dated October 2, 2012, Dr. Highsmith writes that Plaintiff has severe lumbar stenosis with compression of her lower spinal nerve roots which required two surgeries to decompress the nerves in her back to preserve bowel and bladder function and maintain her ability to ambulate, one in February 2011 and a second in July 2012. He further opined that notwithstanding theses surgeries, Plaintiff "still suffers from significant chronic pain . . . and will likely need additional pain management." (R.p. 1060).

In a letter dated October 8, 2012, Dr. Schumann states that Plaintiff has "multiple debilitating medical problems". While deferring to Dr. Highsmith with respect to Plaintiff's joint or spinal limitations, Dr. Schumann otherwise opined that:

> [Plaintiff's] debilitating medical problems include Diabetes, Anemia, Gastroparesis and Sarcoid. These are all working together causing severe problems. She is not able to swallow at times and will have intractable vomiting. Coupled with severe nausea, she will go several days and only be able to keep down sips of liquids. Her anemia is so severe at times that it causes severe shortness of breath. Due to this, she can only walk very short distances (ten to twenty feet) without having to stop for extended periods of rest.

(R.p. 1061).

## III.

As noted, this new evidence was submitted to the Appeals Council as part of Plaintiff's appeal, and pursuant to 20 C.F.R. §404.970:

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the



entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.[7] It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). In order to be "new" evidence, the evidence must not be "duplicative or cumulative," and in order to be "material," there must be a "reasonable possibility that it would have changed the outcome." Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). This evidence was "new", since it was evidence that had not been considered by the ALJ and provided opinion evidence, particularly with respect to the opinion of Dr. Schumann, that was not duplicative and was in fact contrary to the decision. It could also be considered "material", as it represented opinions from two of Plaintiff's treating physicians as to Plaintiff's condition and limitations which, again particularly with respect to the opinion from Dr. Schumann, directly contradict the ALJ's findings. Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions]. However, the Appeals Council stated simply that "this information does not provide a basis for changing the Administrative Law Judge's decision". (R.p. 3). No discussion or analysis of this evidence was provided, and the undersigned concludes that the Appeals Council committed clear error in its handling of this evidence under the facts of this case.

      The Fourth Circuit held in Meyer that Appeals Councils are not required to articulate a rationale for denying a request for review, and are required to make findings of fact and explain its reasoning only where it grants a request for review and issues its own decision on the merits. Meyer, 662 F.3d at 706. Nevertheless, the Meyer court also noted that it was "certainly mindful that 'an express analysis of the Appeals Council's determination would [be] helpful for purposes of

---

[7]The parties do not appear to dispute that the additional evidence relates to the period on or before the ALJ's decision.



judicial review;'" Meyer, 662 F.3d at 706 (citing Martinez v. Barnhart, 444 F.3d 1201, 1207-1208 (10th Cir. 2006)); and went on to hold that, where the treating physician in that case had submitted a letter to the Appeals Council detailing Plaintiff's injuries and recommending significant restrictions on Plaintiff's activity, it "simply [could not] determine whether substantial evidence support[ed] the ALJ's denial of benefits . . .," because the ALJ, in rendering his decision, had specifically emphasized that the record *before him* did not include any restrictions from the treating physician. Id. at 707. Therefore, the Meyer court reversed the judgment of the district court and remanded for rehearing by the Social Security Administration. The case presently before the Court is subject to reversal for this same reason.

Consistent with Meyer, remand is appropriate here in order to have the evidence considered because it is evidence from treating physicians which was not available to the ALJ and which undermines the ALJ's findings. The Commissioner argues that the additional evidence from Drs. Highsmith and Schumann is not "new" because Plaintiff could have asked these physicians to provide an opinion on her behalf and submit it to the ALJ prior to his decision. However, the Commissioner appears to make her argument based on the definition of "new evidence" pertaining to sentence six remands,[8] rather than the definition of new evidence presented to the Appeals

---

[8]A district court may review the Commissioner's denial of benefits pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g). See Shalala v. Schaefer, 509 U.S. 292, 296 (1993)[stating sentence four and sentence six are the "exclusive" methods by which courts may remand social security appeals]. Under sentence four, review is limited to the pleadings and the administrative record. See 42 U.S.C. § 405(b); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)(en banc)["'Reviewing courts are restricted to the administrative record in performing their limited functioning of determining whether the [Commissioner's] decision is supported by substantial evidence.'" ](quoting Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972). Conversely, a case may be remanded under sentence six of 42 U.S.C. § 405(g) where there is new information that is not part of the administrative record "upon a showing that there is
(continued...)



Council.  The letters from Drs. Highsmith and Schumann are considered under sentence four as they were not before the ALJ and are not duplicative or cumulative of the evidence that was before the ALJ, but instead offer the very opinions which the ALJ noted were lacking in the record before him. See Wilkins, 953 F.2d at 96 (4th Cir. 1991).

The last of Dr. Highsmith's treatment notes that were part of the pre-decisional record are from Plaintiff's second surgery in July 2012.  (See R.pp. 1032-1059).  This was after the June 2012 ALJ hearing but prior to the issuance of the decision in September 2012.  Dr. Highsmith's October 2012 letter indicates that, despite this second back surgery, Plaintiff still suffers from "significant chronic pain."  (R.p. 1060).[9]  In his October 2012 letter, Dr. Schumann opines that Plaintiff's "debilitating medical problems" of diabetes, anemia, gastroparesis, and sarcoid work together to cause severe problems; specifically describes the problems Plaintiff suffers from her impairments of gastroparesis and anemia (which the ALJ did not even find to be severe impairments based on the record before him at the time); and further opines that Plaintiff is only able to walk very short distances without having to stop for extended periods of rest.  (R.p. 1061).  Nonetheless, the Commissioner argues that this additional evidence is not "material" as there was no reasonable possibility it would have changed the outcome of the ALJ's decision because neither letter includes

---

[8](...continued)
new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see also Schaefer, 509 U.S. at 297 n. 2 ["Sentence-six remands may be ordered in only two situations: where the [Commissioner] requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency."](citations omitted).

[9]It is noted that when Dr. Highsmith stated that Plaintiff was still suffering "significant" pain after her initial surgery, it was described as being at a level of 10/10 on the pain scale. (R.p. 687).



a function-by function analysis of Plaintiff's work-related limitations. However, this additional evidence is material as there is a reasonable possibility that it could have changed the outcome.

The ALJ specifically cited as a rationale for his findings that "none of the claimant's treating physicians have placed permanent work restrictions on her or advised that she was incapable of all types of work activity," a finding that was true at the time. (R.p. 22). However, in his letter submitted to the Appeals Council, Dr. Schumann opined that due to her impairments Plaintiff could only walk distances of ten to twenty feet without stopping for extended periods of rest,[10] while Dr. Highsmith opined that Plaintiff continues to suffer from "significant chronic pain", even after her surgery of July 2012, both of which are relevant to the ALJ's credibility determination and the effect of pain on Plaintiff's RFC. Additionally, while the ALJ concluded that neither Plaintiff's gastroparesis or her anemia was even a severe impairment, in his letter Dr. Schumann as Plaintiff's treating physician discusses and notes specific medical problems and limitations caused by these conditions, and opines that they are "debilitating". Of course, no discussion or analysis of this new evidence or opinions has been performed since the ALJ did not have these opinions before him when rendering his decision. See, e.g. Morales v. Apfel, 225 F.3d 310, 317-318 (3d Cir. 2000) [ALJ should explicitly weigh the evidence and explain his rejection of the medical opinion of a treating physician].

---

[10]Dr. Nancy Lembo, Plaintiff's pain management physician, noted Plaintiff walked with a cane for support in August 2011 (R.p. 929), and Dr. Schumann also noted in June 2012 that Plaintiff walked with a cane (R. 981). However, although the ALJ acknowledged Plaintiff's testimony that she had been prescribed a cane for walking in 2011 because of muscle spasms and shaking that caused her to lose her balance, and noted her testimony that she often used a walker that had been prescribed following a previous back surgery (R.p. 19, see R.p. 41-42), he did not analyze whether Plaintiff required the use of an assistive device and if so how that would affect Plaintiff's RFC.



Hence, there is no way for this Court to know what the ALJ's decision would have been if, at the time the case was before him for decision, this evidence from Plaintiff's treating physicians as to the extent of her condition and limitations based on their care and treatment of the Plaintiff over an extended period of time had been considered. While it is certainly possible that the ALJ on remand might still reach the same conclusions as are set forth in the original decision, or perhaps determine that Plaintiff could still perform other types of work even in light of these opinions, that is a finding that must be made by the ALJ, not by this Court in the first instance. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009)["Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."]; Nester v. Astrue, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."].

Therefore, this case should be reversed and remanded for consideration of all of Plaintiff's impairments (including her gastroparesis and anemia) and her appropriate RFC in light of the additional opinion evidence from Plaintiff's treating physicians. With respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].



## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for reevaluation of the evidence as set forth hereinabove, and for such further administrative action as may be necessary.  See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 5, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

